## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**NORMA ZELLNER,**

                  **Plaintiff,**

**-vs-**                                      **Case No.  6:05-cv-691-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                  **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the Court respectfully **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED.**

### I. BACKGROUND

**A.     Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on November 26, 2001.  R. 50-52, 237-41.  She alleged an onset of disability on June 1, 2000, due to acid reflux, anemia, depression,

and chronic diarrhea.  R. 16.  Her application was denied initially and upon reconsideration.  R. 31-35,

242-50.  Plaintiff requested a hearing, which was held on February 10, 2004, before Administrative

Law Judge Arthur W. Stacey (hereinafter referred to as "ALJ").  R. 253-76.  In a decision dated

August 30, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of

his decision.  R. 13-22.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 11-12.

The Appeals Council denied Plaintiff's request on March 1, 2005.  R. 8-10.  Plaintiff filed this action

for judicial review on May 6, 2005.  Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary,

Plaintiff complained of acid reflux, anemia, depression, and chronic diarrhea. R. 73.  After reviewing

Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from

gastroesophageal reflux disease ("GERD"), abdominal pain, history of fibrocystic breast disease,

stress incontinence and depression, which were "severe" medically determinable impairments, but

not impairments severe enough to meet or medically equal one of the impairments listed in Appendix

1, Subpart P, Regulations No. 4.  R. 18.  The ALJ determined that Plaintiff retained the residual

functional capacity (RFC) to perform light work, as she could sit, stand, and walk for six hours in an

eight-hour workday, and she is able to lift and carry twenty pounds occasionally and ten pounds

frequently.  R. 20.  In making this determination, the ALJ found that Plaintiff's allegations regarding

her limitations were not totally credible for the reasons set forth in the body of the decision.[1]  R. 21,

Finding 5.  Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant

work as a salad maker, sandwich maker, and laundry room worker.  R. 21, Finding 7.  Accordingly,

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical reports and lack of exertional limitations, and Plaintiff's stated daily activities.  R. 20.

-2-

the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 21, Finding 9.

Plaintiff asserts that the ALJ erred by finding she could return to her past relevant work, even though Plaintiff suffered from a non-exertional impairment.  Plaintiff also claims that the ALJ erred by improperly applying the pain standard and evaluating her credibility.  For the reasons that follow, the Court respectfully **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### III. SUBJECTIVE COMPLAINTS AND CREDIBILITY

Plaintiff claims that the ALJ erred in evaluating her limitations from epigastric pain and frequent trips to the bathroom and the ALJ should not have discredited Plaintiff's complaints. She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate reasons for discrediting her complaints. Plaintiff contends these erroneous findings led the ALJ to conclude she could perform her past work.[2] The Commissioner responds that the ALJ properly rejected Plaintiff's testimony concerning her nonexertional impairments in finding Plaintiff not disabled.

Epigastric pain and chronic diarrhea are non-exertional impairments. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

---

[2]The Commissioner responds to an argument that Plaintiff failed to articulate, that the ALJ did not provide a detailed description of her past jobs or perform a comparison of her RFC with her particular past employment. The Court agrees with the Commissioner that evidence of the physical requirements and demands of Plaintiff's past relevant work was provided in a detailed work history report dated December 27, 2001. R. 86-93. Plaintiff's description of her past relevant work is consistent with the description of light work or less.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself,

conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

      Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated

reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  As a matter of law,

the failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545

(11th Cir. 1988).

      Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was

aware of the governing standards for evaluating subjective complaints because he cited the applicable

regulations and Social Security Ruling ("SSR") 96-7p.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-

26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even

though he did not "cite or refer to the language of the three-part test" as "his findings and discussion

indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He

obviously determined that plaintiff had an objective medical condition that could give rise to the

alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the

alleged complaints.  *See* R. 20.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, immediately before determining Plaintiff's RFC, the ALJ stated,

> At the hearing, the claimant testified that she was fired because she was constantly in the bathroom.  In fact, she admitted going to the bathroom about 17 times during the day and being unable to finish a meal without going to the bathroom.  However, notes fail to confirm this frequency.  She also has had gastro reflux for at least 15 years.  She has constant pain from the neck to the rectum and she described the pain as being a number ten in a scale of one to ten, ten being the most severe.  Although her medications help, the claimant indicated that they make her drowsy and itchy.  The claimant admitted being able to lift up to five pounds, sit from 15 to 30 minutes, stand for 15 minutes and walk one block; however, none of the treating or examining physicians imposed any exertional limitations.  Further, the results of the diagnostic studies are not consistent with such severe limitations.

> After careful consideration of the medical evidence and the subjective complaints, the undersigned finds that the claimant has the ability to perform light work activity, as that term is defined by the Commissioner's Regulations.  The record and the claimant's own testimony failed to support limitations precluding light work limitations.  The claimant herself admitted to Dr. Oatley, a consultant, that she lived alone, prepared her own meals, was self sufficient in bathing and dressing, was able to perform all of her household chores including the laundry, spend the day watching television or reading and went to church.[3]

R. 20.  The ALJ also discussed Plaintiff's lack of credibility about her symptoms in his discussion of her lack of mental limitations:

> On April 21, 2004, the claimant was evaluated by Dr. J. Jeff Oatley, a psychologist, at the request of the Social Security Administration.  On this occasion, the claimant admitted to the examiner that she had received no prior inpatient or outpatient counseling from any mental health professional.  She had merely received psychopharmacological treatment from her primary health care providers. . . . She only reported having GERD and depression. . . . The claimant's attention span and activity level was appropriate and she was able to read the items of the MMPI (Minnesota Multiphasic Personality Inventory Test) without assistance.  Although she was irritated because she did not want to do the testing, the claimant completed the same.

---

[3]At the hearing, Plaintiff testified that she lived with her husband and that her daughter provided significant help with household chores.  This apparent discrepancy may be explained by the difference in time between the hearing and Dr. Oatley's examination.

> *The       testing was found to be invalid and it was felt that she was malingering since she presented as having many problems that were not probably experienced.*  With regards to activities of daily living, Dr. Oatley concluded that the claimant did not have any severe limitations given that she lived alone, prepared her own meals, was self sufficient in bathing and dressing, and performed all household chores including the laundry.  With regards to social functioning, the claimant reported having no friends but spent her day watching television or reading. . . . The undersigned accepts the findings made by Dr. Oatley, consultant, because they are supported by the evidence of record.  The claimant herself has admitted that she has not undergone treatment from any mental health professional. Instead, she has been prescribed medications by her regular treating physician.  Thus, it is determined that the claimant's alleged depressive disorder fails to prevent the claimant from performing substantial gainful activity.

R. 19-20 (emphasis added).

Plaintiff contends that the ALJ improperly rejected her testimony that sometimes she "would have to go to the bathroom seventeen times a day" and sometimes cannot make it through the night. R. 260.  Plaintiff's daughter, Tanya Jackson, testified that her mom has to constantly use the bathroom, has had accidents in the grocery store, and is embarrassed and depressed about it.  R. 273-74.  Both Plaintiff and her daughter testified that frequent use of the bathroom has caused Plaintiff to be fired from jobs.  R. 274.  Plaintiff implies that there were few notes of her pain and frequent trips to the bathroom in her medical records because, as she testified, she was unable to see her gastroenterologist, Dr. Goldberg, since he was expensive and she could not afford it.  R. 262.  Plaintiff also argues that other medical records, from Dr. Goldberg and doctors at Halifax Health Centers, which support her testimony that she was having bouts of diarrhea and loose stools.

The Court finds that the ALJ properly discredited Plaintiff and the record as a whole does not support the severity of the "chronic diarrhea" as she alleges.  Most telling of Plaintiff's lack of credibility is her performance on the MMPI administered by Dr. Oatley.  Plaintiff had no problem

completing the test without assistance, although she was irritated at having to submit to the consultative exam and did not want to complete the test. R. 232. However, Dr. Oatley found:

> Testing is invalid as Mrs. Zellner self-presented as having many problems that are not probably experienced. Her F and Schizophrenia exceeded scoring norms . . . and all clinical scales were significantly elevated. This profile pattern is referred to in the literature as "fake bad." Due to the severity of this response pattern, no additional interpretations can be made.

R. 232. His diagnosis of Plaintiff was that she was "malingering . . . as indicated by the pattern on the MMPI. Because Dr. Oatley did not believe Plaintiff he also noted that GERD could be ruled out[4]. The state reviewing physician opined that the severity of Plaintiff's symptoms were disproportionate to the expected severity for Plaintiff's medical impairments; she had no dehydration, weight loss, hospitalization, or emergency room visits for it. R. 162. Plaintiff also reported to Dr. Oatley that she "was in trouble for grand theft." R. 232.

Plaintiff testified that she had suffered from GERD for fifteen years, yet – as the ALJ noted – diagnostic testing failed to reveal any abnormalities. R. 18. Specifically, an ultrasound of the upper abdomen performed in January 1997 was normal and a colonoscopy and upper endoscopy performed in May 1997 were normal. R. 113, 117-18. An upper GI series performed in August 2000 was normal. R. 148. Extensive testing for Giardia, cyclospora, parasites, blood in the stool, toxins, or other pathogens were all negative. R. 149-55. The August 2002 consultative examination performed by Dr. Coleman also revealed that bowel sounds were normal. R. 195. Although Dr. Coleman noted "severe" GERD as reported by Plaintiff, he noted that despite Plaintiff's complaints, she did not appear to be in any acute distress. R. 194.

---

[4]"Doctors frequently will rule out various possible diagnoses when figuring out the correct diagnosis." *See* http://www.medicinenet.com/script/main/art.asp?articlekey=54842&page=3.

The overall pattern of medical records reflect that Dr. Goldberg, Plaintiff's treating gastroenterologist, began treating Plaintiff for problems with diarrhea in 1997.  R. 118.  He performed a colonoscopy and endoscopy, both with normal results.  R. 117-18.  Dr. Goldberg prescribed Metamucil to help with the diarrhea.  R. 108.  In July 1998, her diarrhea was described as "intermittent."  R. 105.  By September 1999, when Plaintiff complained of worsening GERD symptoms to a different treating physician at Halifax (Keech) Health Center, the physician counseled and reviewed precautions with Plaintiff on diet and behavior modifications.  R. 135.  The physician was irritated by January 2000, when Plaintiff still had not had the stool studies done.  R. 131.  By August 2000, the Halifax Health Center physician counseled Plaintiff that the "slimy stool" Plaintiff complained of was not diarrhea and she should not be taking the prescribed Lomotil for the condition; stools were more solid by the afternoon and during the night.  R. 128-30.  The physician again discussed diet and lifestyle changes with Plaintiff because the physician "suspected strongly" that Plaintiff's "GERD" symptoms were secondary to her diet and lifestyle.  R. 128.  Notes from a doctor visit in March 2001 reflect Plaintiff's report of "some loose stools," but nothing incapacitating.  R. 145.

Plaintiff did not change her drinking habits, continuing to drink alcohol, to the point that one physician remarked in the notes "? Alcoholism" on Plaintiff's reports that she drank a "six pack of beer" usually on the weekends.  R. 119 (August 14, 2002).  The state reviewing physician noted that, despite Plaintiff's treatment for GERD she "continues alcohol and tobacco."  R. 202.  In March 2001, Plaintiff told Dr. Fabian, treating her for a lump in her breast, that she drank "one beer per

day."[5]  R. 145.  As of the consultative physical exam in August 2002, Plaintiff was still drinking, reportedly on the weekends, usually four cans of beer.  R. 193.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints of chronic diarrhea and epigastric pain.  Plaintiff did not modify her behavior despite her treating physician's advice to do so to reduce her GERD symptoms.  The ALJ's reasons included inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies between her statements at the hearing and to her medical providers, as well as her activities of daily living.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.  The ALJ's reasons for not finding Plaintiff totally credible are supported by substantial evidence.

## III.    CONCLUSION

The record in this case shows that Plaintiff has some discomfort related to reflux and loose stools and her activities are affected by her ailments to some degree.  The ALJ appropriately considered these circumstances and Plaintiff's credibility and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the Court finds the ALJ's decision to be consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  If this Report and Recommendation is adopted, it is further recommended that the Clerk of the Court be directed to enter judgment and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[5]Dr. Goldberg noted in January 1997 that Plaintiff was drinking two quarts of beer per day.  R. 114.

Recommended in Orlando, Florida on June 28, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy